IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MORGAN BLEVINS                                            PLAINTIFF

V.                                   NO. 11-5056

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Morgan Blevins, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her application for SSI on February 8, 2008, alleging an inability to work since September 25, 2007, based on:

> memory loss, partial paralysis, nerve damage, depression, partial use of left hand, slow writing skills writes very slowly, very weak on her left side, very poor memory skills, unable to move quickly using her hands or to think quickly with the memory loss.  Pain in the left side and with tremors and cramps on left side will not allow her to work at a job. Memory loss part paralyzed nerve damage depression.

(Tr. 117, 121).  An administrative hearing was held on June 23, 2009, at which Plaintiff appeared with counsel and she and her mother testified.  (Tr. 17-47).

-1-

By written decision dated October 26, 2009, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - History of neurological disorder (left spastic hemiparesis)[1] and mood disorder (depression). (Tr. 55). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 55). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 415.967(b) except that while the claimant can frequently lift and/or carry ten pounds, and occasionally twenty pounds, sit for six hours and stand and/or walk for six hours in an eight hour workday, she can only occasionally climb, balance, crawl, stoop, kneel, and crouch. The non-dominant upper extremity is limited to frequent overhead work and frequent fingering and handling. The claimant must avoid concentrated exposure to pulmonary irritants and hazards such as unprotected heights and moving machinery. The claimant has moderate restrictions maintaining social functioning and concentration, persistence, and pace. The claimant is moderately limited in the ability to make judgments on simple work-related decisions, understand, remember, and carry out detailed instructions, interact appropriately with supervisors, and respond appropriately to usual work situations and routine work changes. Moderately limited means there is more than a slight limitation but the person can perform in a satisfactory manner. The claimant is able to perform work in which interpersonal contact is incidental to the work performed, tasks are learned by rote with few variables, little judgment is required, and supervision is simple, direct, and concrete.

(Tr. 57). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform work as a sewing machine operator; production worker; and packer and hand packager. (Tr. 61).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

---

[1]Hemiparesis - Muscular weakness or partial paralysis affecting one side of the body. Dorland's Illustrated Medical Dictionary 848 (31st ed. 2007).

-2-

denied that request on January 24, 2011. (Tr. 1-4). The Appeals Council also considered additional evidence in making its determination. (Tr. 5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case isn ow ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one

year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

In 1994, when Plaintiff was six years old, she was struck by a car and suffered severe injuries, including traumatic brain injury, resulting in a hemiparesis type palsy on her left side. (Tr. 331-332, 334).  Over the next several years, Plaintiff was involved in occupation, speech, and physical therapies.  (Tr. 312).

-4-

On December 7, 2009, subsequent to the ALJ's decision which was dated October 26, 2009, Plaintiff was seen by Dr. J. Michael Standefer, a neurological surgeon, of the Northwest Arkansas Neurosurgery Clinic.  (Tr. 636-638, 649-651).  Dr. Standefer had previously seen Plaintiff on May 15, 2009, wherein he reported that Plaintiff was in the process of applying for disability, "and this certainly would appear to be reasonable, based upon her residual associated with her head."  (Tr. 609).  In Dr. Standefer's December 7, 2009 report, which was not before the ALJ, he reported that further evaluation subsequent to her trauma disclosed the presence of a visual field loss, difficulty in seeing objects to the left side compared to the right, which had caused reading ability to be impaired.  (Tr. 636).  He also reported that Plaintiff had been found to have "strider"[2] on exertion, and clear-cut confirmation of vocal cord palsy affecting her exercise tolerance.

> Physical impairment remains noteworthy, albeit somewhat subtle.  The patient does have a spastic paraparesis and tends to neglect the left side of her body.  Overall, she has a flat affect, which is easily identifiable in casual conversation.  It is also noted that she has some problems with balance and incoordination which really precludes her from reliably pursuing any occupation that involves off-ground activity.

(Tr. 636).    Dr. Standefer found it noteworthy that there had not been any recent neuropsychological studies conducted, "but day-to-day psychological symptoms include depression, anxiety and agitation, poor self-esteem, poor judgment, and impaired frustration, tolerance and coping skills."  (Tr. 636).  Dr. Standefer noted that Plaintiff was a new single parent mother, and that Plaintiff's mother had assumed legal guardianship of Plaintiff's baby girl.  Plaintiff's mother advised Dr. Standefer that Plaintiff had considerable problems in day-to-day

---

[2]The Court believes Dr. Standefer meant to refer to  "stridor," which is a harsh, high-pitched breath sound such as the one often heard on inhalation with an acute laryngeal obstruction. - Id. at 1811.

care of the child; had weakness of her left ankle and would actually fall once or twice a week; that daily tasks were arduous; and that Plaintiff had difficulty opening jars of baby food, medications or even a toothpaste tube. (Tr. 636). Dr. Standefer concluded:

> It would appear to me that this patient is an acceptable candidate for disability application and confirmation. It would be skeptical that she could sustain long-term employment in virtually any arena. She currently requires assistance of multiple people to perform on a day-to-day basis. For instance, she does have a driver's license but has had multiple automobile accidents and has single-handedly destroyed three automobiles. Long-term financial planning will almost certainly require that the patient be on disability for some form of sustained income.
>
> Neuropsychological studies would probably be worthwhile to assess the patient's current higher brain function. Independent of this recommendation, however, I must continue to advise that application for disability would seem to be very reasonable in this young woman. Although superficially she is functional on a day-to-day basis, she certainly does appear to have sufficient residual neurological impairment and subtle findings consistent of ongoing organic brain dysfunction that make her a very poor candidate in any job market.

(Tr. 638).

When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then the Court

-6-

must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997).  Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.  Id.; Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995).

When considering the relevant time period, the ALJ had before him a Physical RFC Assessment by a non-examining physician (Tr. 377-384);  a Mental Diagnostic Evaluation by a one-time examining doctor (Tr. 389-393);  and a Psychiatric Review Technique form and Mental RFC Assessment completed by a non-examining physician (Tr. 397-410, 411-414).  It is unclear whether the ALJ considered Dr. Standefer's May 15, 2009 report.

Although Dr. Standefer, a neurologist, saw Plaintiff only two times, his reports are the most recent, and he clearly recommended that neuropsychological studies would be worthwhile "to assess the patient's current higher brain function."  (Tr. 638).  The Court believes that had the ALJ considered Dr. Standefer's December 7, 2009 report, he might have reached a different conclusion.  Accordingly, the Court finds it necessary to remand this matter in order for the ALJ to obtain neuropsychological studies, and to obtain a Physical RFC relating to the relevant time period from a physician who takes into consideration Dr. Standefer's most recent reports.

## V.   Conclusion:

Based upon the foregoing, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to

AO72A
(Rev. 8/82)

sentence four of 42 U.S.C. § 405(g).

      IT IS SO ORDERED this 26th day of June, 2011.

                    /s/ *Erin L. Setser*

                    HON. ERIN L. SETSER
                    UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)